Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| MARIELYS MELÉNDEZ LLINAS<br><br>Recurrida<br><br>V.<br><br>OSVALDO VILLEGAS MARTÍNEZ<br><br>Peticionario | KLCE202300998 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022RF00908 (703 RF)<br><br>Sobre: CUSTODIA – MONOPARENTAL O COMPARTIDA |
|---|---|---|

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de septiembre de 2023.

El peticionario, Osvaldo Villegas Martínez, solicita que revisemos la autorización del Tribunal de Primera Instancia a que su hijo menor de edad viaje al Estado de la Florida en los Estados Unidos de Norteamérica.

La recurrida, Marielys Meléndez Llinas, presentó su oposición al recurso.

El 13 de septiembre de 2023 atendimos la moción de auxilio de jurisdicción del peticionario y paralizamos el traslado del menor.

**I**

Las partes son los progenitores de un menor de diez años. El 19 de julio de 2022, la recurrida presentó *Petición en solicitud de custodia monoparental y de traslado permanente de menor.* La recurrida informó su intención de trasladarse permanente con el menor a la ciudad de Tampa en el Estado de la Florida de los Estados Unidos de Norte América. La madre adujo que la mudanza le permitiría tener una oportunidad de crecimiento empresarial y de ofrecerle una mejor

calidad de vida a su hijo. Véase, pág. 122 del apéndice de la oposición.

El 31 de agosto de 2022, el peticionario presentó una reconvención en la que pidió custodia compartida o en la alternativa monoparental y se opuso al traslado. El peticionario alegó que la intención de la madre no era darle mejor calidad de vida a su hijo, ni desarrollarse empresarialmente. Según el peticionario, la madre quiere mudarse, porque su pareja cumple una sentencia federal en la Florida. El peticionario se opuso tenazmente al traslado, porque estaba sumamente alarmado y preocupado por la seguridad de su hijo y pidió que el asunto fuera referido a la Unidad de Relaciones de Familia. Véase, pág. 129 del apéndice del recurso.

El 19 de octubre de 2022, el tribunal dictó una sentencia en la que acogió los acuerdos provisionales sobre custodia y relaciones paternofiliales, denegó por el momento la solicitud de traslado y refirió ese asunto a la Unidad de Trabajo Social para que realizara el informe correspondiente. Véase, pág. 140 del apéndice de la oposición.

El 14 de febrero de 2023, la Unidad Social entregó el Informe Social en el que no recomendó el traslado del menor. Véase, págs. 185 y 186 del apéndice la oposición. La trabajadora social, Genesis Álvarez Rosario, hizo constar textualmente que:

> Como parte de la evaluación de la relocalización del menor a Tampa, se tomaron en consideración las razones de la Sra. Meléndez para el traslado. Entre ellas se identificó que su pareja se encuentra cumpliendo una sentencia en una cárcel federal hace seis años y se espera que en abril de 2023 continuará la misma en arresto domiciliario en el hogar propuesto para la relocalización. Como limitación de nuestra evaluación se destaca que carecemos de la información relacionada a las condiciones con las que debe cumplir el Sr. Maldonado como parte del arresto domiciliario. Además, carecemos de la información sobre la adaptación que éste ha tenido como persona privada de libertad, al igual que no tendremos los datos sobre el ajuste de este en la comunidad. El Sr. Maldonado aun se encontrará en su proceso de rehabilitación que será importante conocer sobre cómo se desempeña en el transcurso y la efectividad de las intervenciones que se hagan con él como parte de ese proceso para la reintegración a la vida

comunitaria. El menor está ajeno a la situación de conflicto con la ley al que ha estado expuesto el Sr. Maldonado, además de que solo interactuó con este en una relación de convivencia durante dos años de vida. Aunque se ha mantenido la relación entre el Sr. Maldonado y el menor mediante visitas a la institución carcelaria y por teléfono, se debe hacer un proceso paulatino para lograr una relación de convivencia saludable. Además, se debe contar con la información de que el Sr. Maldonado no será un potencial ejemplo corruptor para el menor.

Luego de evaluar los hallazgos y hacer un análisis comparativo sopesando los factores de riesgos y de protección, entendemos que en estos momentos la relocalización no es beneficiosa para el menor Osvaldo.

El 15 de febrero de 2023, el TPI ordenó a las partes a mostrar causa por la cual no acoger el informe social. El peticionario se allanó al informe.

El 23 de febrero de 2023, la recurrida presentó una *Moción en Solicitud de Autorización de Viaje*. La recurrida pidió autorización para que el menor viajara a Tampa a pasar las vacaciones de Semana Santa con sus tíos, su abuela y sus primas e informó que pernoctaría en su residencia. Véase, pág. 271 del apéndice.

El peticionario se opuso. Aunque expresó que nunca se había opuesto a que el mejor viajara con su madre, alegó que la situación cambió en el mes de marzo. Según el peticionario, en el informe social consta que la pareja de la madre saldrá en arresto domiciliario justo en la semana del viaje. El peticionario se opuso al viaje porque el estudio recomendado por la Trabajadora Social no había sido realizado. Véase, pág. 277. Ambas partes presentaron escritos en apoyo a sus respectivas posiciones. El 10 de marzo de 2023, el TPI autorizó el viaje. No obstante, ordenó a la recurrida informar el momento del egreso de su pareja y la fecha en que se integraría al núcleo familiar para referir el asunto a la Unidad de Trabajo Social.

El 13 de marzo de 2023, la recurrida presentó *Moción en solicitud de impugnación de informe social anunciando prueba pericial y en solicitud de autorización para actualización de informe*

*interagencial*. La recurrida alegó que la trabajadora social que preparó el informe no tenía la información necesaria para determinar el mejor bienestar del menor y que sus recomendaciones están basadas en especulaciones. Según la recurrida, la trabajadora social no contó con información sobre las condiciones del arresto domiciliario, el proceso de adaptación de su esposo como una persona privada de libertad y de su ajuste a la comunidad. Además, alegó que se presume que un convicto que sale a la libre comunidad antes de cumplir su sentencia se ha rehabilitado y que ha mantenido a su hijo alejado de la conducta delictiva atribuible a su esposo.

La recurrida pidió una vista de impugnación, informó que impugnaría el informe con el testimonio de la perito Melissa Rodríguez López y pidió permiso para que el perito Paul Jesús Fericelli presente un informe interagencial actualizado. Véase, pág. 246 apéndice recurrido.

El 23 de marzo de 2023, el TPI dejó sin efecto el proceso de impugnación del informe social hasta tanto se realice el informe complementario en el cual se evaluaría el compañero de la recurrida.

Además, el 23 de marzo de 2023, el peticionario volvió a solicitar la paralización del viaje del menor.

El 29 de marzo de 2023, el TPI reconsideró y no autorizó el viaje, debido a que la recurrida admitió que su esposo saldría de prisión entre el 27 al 29 de marzo de 2023. Según el tribunal, esas fechas coincidían con las que el menor estaría de viaje. El tribunal fue claro en que el menor no podía viajar, si iba a ser llevado al lugar donde la pareja de su madre cumple restricción domiciliaria. Véase, pág. 317 del apéndice de la oposición.

La recurrida presentó una moción de reconsideración urgente a la que el padre se opuso.

El 30 de marzo de 2023, el TPI reiteró que el menor no podía pernoctar en el mismo lugar en el que su padrastro cumple restricción

domiciliaria. No obstante, le permitió viajar si se quedaba con su madre en un hotel. Además, advirtió que el Sr. Maldonado debía ponerse a la disposición de la Unidad de Trabajo Social de forma inmediata para ser evaluado. Véase, pág. 333 del apéndice. El 18 de mayo de 2023, la recurrida pidió que se permitiera el viaje del menor para ver la dinámica con su padrastro. El padre se opuso. El TPI denegó la solicitud. Véase, pág. 348 del apéndice.

El 25 de agosto de 2023, la recurrida presentó *Moción en solicitud de autorización a viaje,* en la que incluyó las alegaciones siguientes:

> 6. Solicitamos autorización a este Honorable Tribunal a los fines de que el menor, OYVM, pueda realizar un viaje familiar a Tampa, FL desde el 15 de septiembre de 2023 al 17 de septiembre de 2023.
>
> 7. De este Honorable Tribunal autorizar el viaje, el menor pernoctaría en un Airbnb de la ciudad Wesley Chapel del estado de Florida.
> …
>
> 9. De esta Distinguida Corte autorizar el viaje, la parte aquí compareciente proveería a la brevedad posible la dirección del Airbnb en donde pernoctaría el menor.
>
> 10. El menor podrá ser contactado al teléfono celular de la señora Meléndez: (939) 216-1147.

Página 1 del apéndice de la oposición.

El 30 de agosto de 2023, el peticionario se opuso. El padre expresó que le preocupaba la seguridad de su hijo, debido al carácter delictivo de su padrastro.

El 31 de agosto de 2023, el TPI dictó la orden siguiente:

> NUESTRA DETERMINACION DE 29 DE MARZO NO SE BASO EN UNA PROHIBICION ABSOLUTA DE QUE EL MENOR SE RELACIONARA CON LA PAREJA DE LA DEMANDANTE. SE INFORMA QUE EL MENOR PERNOCTARA EN UN AIRBNB (DISTINTO A LA PROHIBICION EMITIDA ALLA PARA EL 30 DE MARZO DE 2023.
>
> LA PETICION SE TRATA DEL ASUNTO QUE ESTA BAJO CONSIDERACION DE LA UNIDAD DE TRABAJO SOCIAL SIENDO ASI, EVALUADAS LAS MOCIONES Y EL EXPEDIENTE, SE AUTORIZA EL VIAJE.

DEBERA LA PARTE DEMANDANTE PROVEER TODA LA INFORMACION QUE REQUIERA EL PADRE EN LAS PROXIMAS 48 HORAS. COMUNIQUENSE LOS ABOGADOS.

Página 3 del apéndice de la oposición.

El peticionario presentó *Urgentísima reconsideración a permiso para viajar del menor.* El peticionario insistió en que no se autorice el viaje del menor hasta tanto no esté disponible el resultado de la investigación que realiza la Unidad Social sobre la pareja de la madre. Según el peticionario, el hecho de que el menor no pernocte donde reside Maldonado Villafañe, no garantiza que no tengan contacto. Véase, pág. 4 del apéndice.

El 6 de septiembre de 2023, el perito envió a la Unidad Social el Informe Interagencial Complementario. Véase, pág. 354 del apéndice.

El 8 de septiembre de 2023, el TPI dictó lo siguiente:

LA PETICION DE LA MADRE SE LIMITA A UN VIAJE DE PLACER, Y NO SE TRATA DE UN TRASLADO, ASUNTO ANTE LA CONSIDERACION DEL TRIBUNAL.

NO SURGE DE LO ALEGADO NI DEL INFORME SOCIAL QUE LA MADRE NO TENGA CAPACIDADES PROTECTORAS. DE HECHO EL INFORME ESTABLECE LA CAPACIDAD DE AMBOS PROGENITORES DE HACERLO DE MANERA CONJUNTA. INCLUSO EL INFORME ESTABLECE EL ROL PROACTIVO QUE LA MADRE HA ASUMIDO EN EL CUIDADO DEL MENOR Y SU ATENCION EN VARIAS AREAS DE LA VIDA DEL MENOR.

POR TODO LO CUAL SE DECLARA NO HA LUGAR A LA SOLICITUD DE RECONSIDERACION.

Inconforme el peticionario presentó este recurso en el que alega que:

Erró el foro de instancia al permitir que la señora Meléndez Llinas traslade al menor fuera de Puerto Rico a un viaje de placer que solo atiende los intereses de ella y de su actual pareja, el Sr. José Maldonado Villafañe—y ninguno del menor—, anulando la objeción del padre con custodia compartida y sin darle el peso debido a los riesgos de seguridad presentes en el ambiente al que se expondrá el menor al relacionarse con la actual pareja de la señora Meléndez Llinas, quien es un convicto de narcotráfico y lavado de dinero, con historial de adicción a sustancias controladas, y que permanece bajo arresto domiciliario luego de cumplir años de cárcel, y sobre todo

de quien se desconocen sus circunstancias personales y sociales actuales.

Erró el foro de instancia al emitir una determinación inherentemente contradictoria que reconoce la existencia de un riesgo a la seguridad y bienestar del menor durante un viaje de placer fuera de Puerto Rico con su madre, que provee como única medida cautelar que el menor no "pernocte" en la misma vivienda que la actual pareja de la madre, quien es un convicto de narcotráfico y lavado de dinero, con historial de adicción a sustancias controladas, y que permanece bajo arresto domiciliario luego de cumplir años de cárcel, mientras que a la vez el tribunal de instancia permitió el traslado del menor durante dicho viaje y dio carta abierta y amplia para que el menor se inserte sin restricción en la vida diaria y social de Maldonado Villafañe, sin esperar los resultados del estudio de la Unidad Social sobre las circunstancias personales y sociales actuales de esta persona.

## II

### A.

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933 (32 LPRA sec. 3491), hoy conocido como Ley de Recursos Extraordinarios; *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de Leon Corp. v. American International Insurance Company of Puerto Rico*, 205 DPR 163, 174 (2020); *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 710 (2019). Aunque la característica principal del recurso reside en el carácter discrecional del mismo, tal determinación no es irrestricta, está sujeta a los criterios señalados en la Regla 52.1 de Procedimiento Civil. Advertimos que esta regla ha sufrido modificaciones a través del tiempo para expandir el marco discrecional que ostentan los foros revisores en la expedición del recurso.

En la actualidad, la Regla 52.1 de Procedimiento Civil específicamente dispone que el recurso de certiorari solamente será expedido:

... para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. 32 LPRA Ap. V, R. 52.1.

Superado el análisis al amparo de la Regla 52.1 de Procedimiento Civil, *supra,* el foro apelativo deberá auscultar los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones para guiar su discreción al intervenir con la resolución u orden interlocutoria recurrida. La Regla 40 dispone:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ha de quedar claro que la denegatoria a expedir un recurso de certiorari no implica la ausencia de error en el dictamen, cuya revisión se solicitó, ni constituye una adjudicación en sus méritos. Sino que responde al ejercicio de la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008).

**B.**

Los casos de familia son de alto interés público. *Otero Vélez v. Schoroder Muñoz,* 200 DPR 76, 85 (2018). Los asuntos de familia son complicados, debido a que las controversias envuelven emociones y sentimientos profundos. *Machargo Olivella v. Martínez Schmidt,* 188 DPR 404 (2013).

Los tribunales tienen el poder inherente de velar por el mejor bienestar de los menores, como parte de su función de "parens patriae". El mejor bienestar del menor prevalece, cuando está en conflicto con otros intereses. *Muñoz Sánchez v. Báez De Jesús,* 195 DPR 645, 651 (2016).

El poder de "parens patrie" del Estado autoriza a los tribunales a ordenar la comparecencia de todas las personas que puedan ayudar a determinar cuál es la mejor manera de proteger el bienestar del menor. Los tribunales tienen potestad para ordenar las investigaciones de índole social que entiendan procedentes. La función principal de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores es asesorar al juzgador, mediante evaluaciones periciales, que le permitan tomar decisiones informadas en los casos ante su consideración. *Jusino González v. Norat Santiago,* 2023 TSPR 47; *Muñoz Sánchez v. Báez De Jesús,* supra, pág. 652. El derecho de un progenitor a tener consigo a sus hijos es uno de superior jerarquía.

No obstante, ese derecho tiene que ceder ante la facultad de "parens patriae" del Estado de salvaguardar y proteger el mejor bienestar del menor. *Marrero Reyes v. García Ramírez,* supra, págs. 105-106.

El Manual de Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores detalla el proceso a seguir cuando la evaluación pericial de un trabajador social es necesaria. Los trabajadores sociales son responsables de preparar un Informe Social Forense. Luego de terminado el informe, deberán entregar el expediente social completo al Técnico o Auxiliar de Sistemas de la Oficina de la Unidad Social de Relaciones de Familia y Asuntos de Menores, no más tarde de 30 días calendario. El técnico o auxiliar remitirá el expediente a la secretaria del tribunal para que el juez examine el informe social y emita las órdenes que estime pertinentes. *Muñoz Sánchez v. Báez De Jesús,* supra págs. 652.

**III**

La Regla 52.1, *supra,* autoriza nuestra intervención, porque el peticionario recurre de una determinación dictada en un caso de relaciones de familia, revestido del más alto interés público. La expedición del recurso es necesaria para que podamos ejercer nuestra función de *parens patrie* en beneficio del mejor interés del menor.

La controversia se reduce a determinar si el TPI erró al autorizar el viaje del menor al Estado de la Florida, sin evaluar el Informe sobre el proceso de rehabilitación de su padrastro.

La Unidad Social no recomendó el traslado, debido a la ausencia de la información necesaria para garantizar que la relación con el padrastro obre en el mejor bienestar del menor. La Trabajadora Social advirtió la necesidad de conocer el desempeño del señor Maldonado en el proceso de su rehabilitación y reintegración a la vida comunitaria. Por esa razón, señaló que era indispensable tener información sobre: (1) las condiciones del arresto domiciliario, (2) la

adaptación del señor Maldonado como persona privada de libertad y (3) su ajuste en la comunidad.

El 23 de marzo de 2023, el TPI reconoció la necesidad de un informe complementario sobre el esposo de la madre. No obstante, autorizó el viaje del menor a la Florida, sin tener listo el informe. El tribunal entendió que para garantizar su mejor bienestar era suficiente con que no pernoctara en el mismo lugar que su padrastro.

La decisión recurrida no es la que mejor garantiza el bienestar del menor. Por el contrario, pone en riesgo su seguridad. El señor Maldonado cumple una sentencia por delitos graves relacionados al narcotráfico. El hecho de que el menor no pernocte en el mismo lugar que su padrastro, no impide que ambos tengan contacto o que se relacionen. Sin lugar a duda, era muy probable que eso sucediera, porque la intención del viaje era conocer el género del hijo del señor Maldonado.

Los tribunales no podemos pasar por alto que nuestra función de *parens patrie* nos obliga a velar por el mejor bienestar del menor, incluso sobre los derechos, intereses y deseos de los padres. El TPI falló al deber de *parens patrie*, porque autorizó el viaje sin el informe complementario, con los elementos necesarios para emitir una determinación que garantizara la seguridad del menor.

El foro primario erró. La determinación recurrida trastoca la protección del mejor interés y bienestar del menor, porque no es una decisión informada. Adolece de criterios fundamentales que surgen del estudio social, toda vez que este no ha sido completado. Por esa razón, no autorizamos que el menor viaje al Estado de la Florida, hasta tanto el tribunal no tenga a su disposición y evalúe el informe social ordenado.

**IV**

Por los fundamentos antes expuestos, se expide el auto y se revoca la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Notifíquese inmediatamente.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones